The next case called for oral argument is Denny v. Harrisburg Medical Center. Counsel, whenever you're ready, you may proceed. I think I have one more case, but not here, not today. You have to lose all these to get up to see you guys. Every now and then I win one. This is a difficult case because of the geography of Illinois and the composition of our Supreme Court. The natural accumulation rule is outdated. It shouldn't be on the book. It should be done away with, but if this Court were to do that, the Supreme Court comprised of four-sevenths of people from north of here would probably rule it differently. But this case needs to be a case that this Court cites as an exception to that rule. The natural exception rule is a common law rule that grew out of common law. But there have been extensions to that by the common law. The natural accumulation applies to when one thinks about snow and ice, but it's been extended to illogical and extreme and unreasonable situations. The best example of that is Schumann v. Rush Presbyterian. The natural accumulation on the fourth floor of a hospital, that is a ridiculous decision and a ridiculous extension of the act. You cannot have natural accumulation of snow, ice, or water on the fourth floor of a building. That case involved a one-legged woman on crutches trying to exit the elevator and the Court held no duty. That is just flat law. If it is the law, then the law needs to be changed. I don't believe that this law, because that's an aberration. But when I reviewed counsel's defendants' brief, they tried to point out to the Court that there was no duty here because there was a natural accumulation. And I don't think that accurately addresses the issue. If you look at the overall law, and this is a premises liability case, and the overall law is that there is a duty for a business to keep premises safe for invitees, people that are properly there. There are exceptions to that duty. One of those exceptions is a natural accumulation. Another one is open and obvious dangers. If you had a swimming pool, I guess, at the front of your door, you wouldn't have to warn people that you've got a swimming pool there. It's open and obvious danger. But then there are exceptions to that. And there is the deliberate encounter exception that I addressed in my brief. So there is a duty. There are exceptions to that duty. Then there are exceptions to the exceptions. But in going back and reviewing this stuff, again, I was stricken. Sometimes you see things a third or fourth time that you haven't seen before. But I was stricken in this case by the statement by the defense about the facts. It stated in their statement of facts in their brief that the Okay. In page 7 of the brief, I'll give you the facts. They just poured right up the rainwater that was tracked into HMC from outside. Might have refused to receive treatment from the emergency department. So she was escorted by wheelchair to physical therapy. Escorted by wheelchair. I don't know how you can be escorted by wheelchair. I assume what they mean is she was put in a wheelchair and taken from where she fell to physical therapy. And that sort of sums up the heart of the case and the issue that we have here. This isn't Walmart. This isn't Denny's. The plaintiff here, as the defense admits in the statement of facts and admits in the brief, was seriously injured in an accident. Had to have surgery. And as a result of the surgery, had to have physical therapy. She had to have those conditions. I mean, that treatment. This is a hospital. It's not Denny's. It's not Walmart. People have to go there. Here, the patient had to go there because she was directed by her doctor to get better. She's got a duty to mitigate damage in the other case. She's got an obligation to try to get the best care that she can. And this hospital says, come to our hospital. We'll treat you. We'll treat you. And then they say, but we have no duty once you walk inside the door as you walk into it or once you walk inside it. If she slips outside, maybe it's different. I don't know. But the facts here are she slips inside. Now, we've got a woman on crutches with rubber bottoms to bottom on a tile floor that's wet that everybody in the world knows, but most importantly, the hospital knows, is slippery. She's going to slip and fall. But the risk is greater if she does that. As I said in the brief, if you change the context around, put her inside a bed, inside the hospital, tell her to walk down the hallway to do something for her medical care, and she slips and falls there on water, on crutches, clearly a violation of the standards of care. How does it differ? How does the law change because she's walking into the place in the first place? I think that's absolutely wrong. It can't change. When you consider the duty that is owed, you've got to consider all the facts and all the circumstances. Here you've got not Walmart. We're not going there looking for a sale on cornbread mixing or whatever. We have an obligation. If the weather's bad, you can go some other time. You can do something else. You can't go some other place to your physical therapy treatment. Ordered by the doctor, the hospital says, We're glad to do it. We'll take care of you. We'll do all kinds of things. And when she falls inside, puts her in a wheelchair and runs her down. But on this day says, Wait a minute. This is hospital talk. We have no duty to a patient on crutches coming to our hospital for physical therapy. And that's the result of the trial judge's decision. I think the – I pointed out the deliberate encounter exception. It's a criminal liability. I don't know how that would not apply here. If a truck driver has to do his job, has to walk on a product that the court described as light ice, and that's an exception. But an injured person seeking medical care at a hospital designed to give that medical care, it doesn't apply there. It doesn't make any sense. I don't think we can – we shouldn't do away with the NAPA accumulation. That's not going to happen. But the extensions that have been extended, like that ridiculous decision that she made, should be undone. The court, I think, in order to apply the law, we have to look at the facts of the case, the particulars of the case, the people involved, what's going on, what the entity is, and then apply the law under those circumstances. If that is done, there is a duty here because of the nature of what transpired. One of the things I want to try to address. I don't know what the status is of my reply brief. I filed a reply brief. There was a motion to strike. It was granted. I filed a motion to reconsider, and I haven't seen that. I think the motion's been taken with the case. I was outraged by striking of the brief. I guess I get outraged a lot sometimes at the camp. But here, the brief by the fence raises this ridiculous, wrong decision by the First District in shooting, which is what brought my attention to the designation of where you can go in. That along with the statement by the fence and their statement of facts. That is the wheelchair. The facts here are there were more than one entryway to this hospital. The more than one entryway closer to where the physical therapy was. There are all kinds of things the hospital could have done differently. But I think when you talk about Shoemaker, that raises whether they have a duty to make sure there's at least one place, the designated place, is safe. I think the points I raised in reply brief were appropriate and should be considered. But I don't care if the fence wants time to respond. I have no objection to it. I mean, you guys control your calendar. I think you should be fully briefed on all issues. But clearly, the extension of the natural accumulation rule as done in Shoemaker is just wrong. It should be undone. And this case should be used. I would encourage the Court to use it to cut back on those extensions and say that the natural accumulation rule exists, but there are exceptions to it. And the exceptions include if you are a place where people have to go, like a hospital, like an emergency room, and there is a way you can designate a safer place, then I think they have a duty to do that. I think it boils down to a question of facts and all those types of issues. You can talk, if we're having an ice storm and you're trying to get the arm and slip on ice outside, that's a different matter. But that's the facts of the case. It would be what was the hospital in a negative pursuit to those particular facts. Any way they could have stopped that ice from forming and stopped us from getting to the arm. But my gosh, we're talking about an admission by the hospital that there were other ways to handle this problem. Escorting by wheelchair, for example. They know you're coming to our place. Let us know when you get there. We'll make sure you get a wheelchair and take you down to where you're going. Or we can put you in a place where we know the floor is dry, where we know you're not going to slip and fall with rubber tops on the crutches. Or make sure that the designated place is safe. The existing law, as indicated by Shoemaker, has to be reigned in. The law has to be changed so that people are not told to go to the hospital for therapy and then get hurt there, as they would say, not our problem. Thank you. Thank you, Counsel. Counsel? Counsel? May it please the Court. My name is Jennifer Miller-Lowe, and I represent the defendant, Harrisburg Medical Center. Illinois courts are fully aware that snow, ice, and rain and the track inversions are dangerous. And Illinois courts are also aware that it is too burdensome to place a duty on these premises owners to continue to clean or clear these natural accumulations of snow, ice, and rain from the premises. That's why Illinois courts have consistently held that a landowner has no duty to protect others from the presence of naturally accumulated snow, ice, and water or the track inversions. Now, this plaintiff fell here on naturally accumulated rainwater that was tracked into Harrisburg Medical Center. The trial court properly found that as a matter of law, no duty arose to the plaintiff, and Harrisburg Medical Center cannot be held liable for the plaintiff's fall. The decision of the lower court should be affirmed. Now, I would like to discuss two main points with the court today. First, Harrisburg Medical Center had no duty to clean up the natural accumulations of rainwater that was tracked into the hospital. And second, because plaintiff fell on naturally accumulated rainwater that was tracked into the hospital, under Illinois law, the deliberate encounter and the distraction exception does not apply. And also, since Mr. Romick addressed the ingress-egress argument, I would also like to briefly discuss why it's not applicable in a natural accumulation case. Now, the natural accumulation case, or rule, applies to slip-and-fall cases involving property owners and business operators, regardless of where the injury occurs. So, Illinois courts have treated hospitals, shopping centers, restaurants, and employers the same. Now, plaintiff would like to change the law in Illinois so that hospitals are held to a higher standard, but that simply isn't the law. And plaintiff has not cited one case that would support this contention. In fact, plaintiff has talked about the Shoemaker case quite a bit. That case involved an elevator, which is a common carrier, and the court noted that a common carrier is held to the highest degree of care. And still, the appellate court held that the common carrier that was held to the highest degree of care has no duty to clean up natural accumulations of water. Now, plaintiff has also liked to make analogies between Walmart and the hospital. And Walmart seems to be a pretty popular place these days. And fortunately for all of us, there are probably a greater number of individuals of all physical and mental capabilities that internally Walmart daily than they internally hospitals. Now, in this case, the evidence comes from plaintiff herself. So, she testified it had been storming all night and on the morning that she entered the hospital. And that when she walked into the hospital, she fell on what was, quote, obviously, close quote, rainwater that was tracked into the hospital. And I would like to point out to this court that in the Shoemaker case, plaintiff has a problem that, you know, the court overextended itself by stating that it was a natural accumulation on the fourth floor. Well, in that case, they talked about the plaintiff stepped off of an elevator on the fourth floor. Well, she got on to that elevator in the vestibule in the entrance of the hospital. So, she didn't walk too far to the hospital, got on that elevator and went to the fourth floor. So, that's why there was water that was naturally accumulated and tracked in from the outside on the fourth floor. I would also like to point out that the law would be the same whether it was an inpatient who fell on a natural accumulation of water or an outpatient like it was here. The law is the same. So, if there was an inpatient and they would have walked, say, to the entrance, whether they wanted to get some fresh air, and it was ruled that she fell on a natural accumulation of rainwater, there would still be no duty to the plaintiff to clean up that natural accumulation and the hospital couldn't be liable for a fault. Now, plaintiff doesn't like the Shoemaker case, but I want to point out there are multiple other cases that are very similar to the facts in this case, and they're directly on point. That's Reed v. Galaxy Holdings and also the Roberson case. They're very similar. Plaintiff walked in either to a hospital or to a shopping center. They fell on a naturally accumulated puddle of water, and the court found there that there was absolutely no duty for the property owner to clean up that accumulation and they couldn't be held liable for their injuries. I next want to discuss the exceptions to the open and obvious danger, and that is the deliberate encounter and distraction exceptions, have no application to a case dealing with natural accumulations of snow, ice, and water. If this court accepts plaintiff's articulation of the law, it would be a vast expansion of the duties to property owners, and basically the natural accumulation rule would be emasculated. Arguably, the deliberate encounter exception could apply to every natural accumulation case. So, for example, if a person falls while walking in his car, walking to his car in a snowy parking lot, could then claim that since it was necessary to walk to his car, that he had to deliberately encounter the harm and then the landowner's liable. That is simply not the law, and plaintiff has not cited one case to support that contention. Now, this exception would only apply where there's a finding that the accumulation is not natural, and then there would be a regular premises liability case. And then, of course, the defense could argue the open and obvious exception, and then plaintiff would be able to put forward the deliberate encounter and distraction exception. And as this court is aware, defendant's motion to strike plaintiff's required brief is pending. It's taken with the case. Okay, it's taken with the case. I would like to just address the egress issue quickly. Again, if this court accepts plaintiff's argument that property owners have a duty to provide a reasonably safe means of egress and ingress, including the clearing of naturally accumulated snow, ice, and water, the Illinois natural accumulation rule would be emasculated. Everyone has to internally leave properties. So this would mean that property owners would have to clear sidewalks, parking lots, and clean up naturally accumulated rainwater in their entryways so that people could have a safe means of egress and ingress. That's not the law in Illinois. And Mr. Womack's interpretation of the case law is misplaced. I do want to point out a recent case of Reed v. Galaxy Holdings, which is right on point, and it's actually similar to this case. So plaintiff entered a laundromat, and as she entered, she fell in a puddle of water. Plaintiff, as in this case, testified that it had been raining outside and that she fell on what she thought to be trapped in rainwater. The trial court granted the defendant's motion for summary judgment because it's finding that the plaintiff fell on a natural accumulation. Now, at the appellate level, plaintiff, as the plaintiff is doing here, argued that the defendant breached a duty owed to plaintiff to provide a reasonably safe means of ingress and egress. Now, the appellate court ruled that an owner or operator is not liable for injuries sustained due to a natural accumulation of trapped in water, even at the sole point of egress or ingress. Now, the court went on to say that property owners may be liable for injuries resulting from an accumulation of ice, snow, and water if a plaintiff establishes that the means of ingress or egress was unsafe for any other reason other than a natural accumulation of ice, snow, or water. Again, in this case, plaintiff has presented absolutely no evidentiary facts or materials to show that the ingress or egress at the hospital was unsafe for any other reason than the natural accumulation of trapped in rainwater. For these reasons, Harrisburg Medical Center requests that the court confirm the judgment of the circuit court. Thank you. Thank you, Counsel. Counsel? Counsel said that everybody would be treated the same, including employees, that's not an accurate statement of the law. If an employee were injured, that employee would have protection under the Workers' Compensation Act. Counsel also talked about the Chicago case, the fourth floor case, and said that she entered Wolfville on a vestibule and then got out of it. I don't see those facts in the record. If they're there, then they are, but in my memory, there's no indication of how long she walked before she got there. But I don't think it makes any difference. Saying there's a natural accumulation of water on the fourth floor is ridiculous on its face. I don't care how the court got that conclusion. It's a wrong conclusion. It's a wrong law. But I'm torn by the argument about duty. There is a duty on everybody who owns property, excise, reasonable care. For people that are on that property. There are exceptions to that rule. And one of those exceptions is natural accumulation. But apparently, counsel's position is that there are no exceptions to that exception. And the case she cited, I think, shows how ridiculous that argument gets. It says, she cited the Reed case. And that case says that how it is irrelevant whether a natural accumulation remains on the property for an unreasonable length of time. So if the water's there for three days from natural accumulation that happened on Monday, according to this decision, that's still a natural accumulation. And that's what happens when you try to grant divine protection to a rule like natural accumulation. It's based on faith, not on facts, law, or logic. The first thing she said was it's too burdensome on property owners to clean up the water that's walked in. And then in her statement of facts, she said that it was wiped up with a washcloth or a paper towel in a matter of seconds. And that's the definition of too burdensome. She also compared the hospital to Walmart. And there will be a time, I'm sure, when we go to Walmart and get our appendix taken out. But not yet. Not yet. Depends on how you fall. And she said Walmart's popular. I don't go there except to serve subpoenas. But that's just me. But there is a difference between Walmart so far as now and this hospital. The difference is that this patient was directed to go there. And this argument about the direct and counter exception will be used all the time. That's a little much of a stretch. You don't have to go to Walmart. There's no necessity. Some people may think so. And maybe with my example, if I were there to serve subpoenas, it would be an exception. But I don't believe that the exception swallows the rule. I cannot separate the distinction and the protection granted to different parties under the law. We are a society and a country that started out with a common goal. We adopted that in our 1870 constitution and even before that. And the common law is based on what the people believe the law would be based on reason and logic. Every day I have somebody walk in my office saying they can sue because they've slipped the bill without regard to the consequences. That's what the common law is. Maybe that's not right, but that's what people perceive it to be. But whether that's right or not, this case requires an exception. This case requires an exception in a situation where the hospital is in the business of treating people on crutches. Know they're going to come there. Know the risks that are involved. Know it's a greater risk than that of normal public. Ignores that risk and lets somebody get hurt. If you're trying to juggle rubber balls or trying to juggle water for crystal, the standards are different. And you cannot accept from the case law the facts of the particular case. It's not the same to say that trying to get to a Walmart for a special on the 12th of April is like being required to go to your doctor's office or any treatment facility's office for medical care. I think the facts of this case require that this Court recognize that exception. I think, I believe unequivocally, that the whole thing should get thrown out. I think the courts are well qualified to decide whether or not they exercise getting back to the duties. You don't have a duty, but you do have a duty once you voluntarily undertake something. And the courts have long been held in it to be able to decide whether or not the duty exists, whether the duty is properly carried out, and whether there are exceptions to it. I think that's the gist of this case. Thank you very much. Thank you, counsel. We appreciate the arguments and briefs of both counsel, and we will take this case under advise.